# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CMI ROADBUILDING, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-20-832-D |
| WIREGRASS CONSTRUCTION COMPANY, INC., | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant's Motion to Dismiss or, Alternatively, Motion to Transfer Venue, with Brief in Support [Doc. No. 12]. Plaintiff responded [Doc. No. 15], to which Defendant replied [Doc. No. 16]. The matter is fully briefed and at issue.

## BACKGROUND

This case centers around two contracts. Plaintiff, CMI Roadbuilding, Inc. ("CMI"), maintains its principal place of business in Oklahoma City, Oklahoma. Defendant, Wiregrass Construction Company, Inc. ("Wiregrass"), maintains its principal place of business in Dothan, Alabama.

Plaintiff manufactures heavy equipment in the road building, construction, and waste management industries. Wiregrass operates high capacity asphalt production plants. In November 2016, the parties entered into a contract for the sale of certain equipment for a purchase price of $1,522,000. ("the first contract"). Wiregrass paid the non-refundable down payment of $304,000 and made an additional payment of $1,065,400. CMI alleges Wiregrass still owes $152,200 pursuant to the first contract.

In February 2017, the parties entered into a contract for the relocation of an asphalt plant from Lacon, Alabama to Clanton, Alabama ("the second contract"). CMI was to dismantle, transport, install, and commission the asphalt plant. CMI states the total price was $295,000, and Wiregrass paid $147,500. CMI alleges that Wiregrass still owes $147,500 pursuant to the second contract.

CMI filed suit on August 18, 2020, alleging two claims for breach of contract and two claims for unjust enrichment. Compl. [Doc. No. 1], at 4–7. Wiregrass filed a motion to dismiss, or alternatively, a motion to transfer venue [Doc. No. 12]. Wiregrass contends that (1) there was insufficient service of process, (2) the Court lacks personal jurisdiction, and (3) this District is not the proper venue.

## DISCUSSION

### I. Insufficient Service of Process

A motion under FED. R. CIV. P. 12(b)(5) challenges the "mode of delivery or the lack of delivery of the summons and complaint." *Craig v. City of Hobart*, No. CIV-09-0053-C, 2010 WL 680857, at *1 (W.D. Okla. Feb. 24, 2010). Once a defendant files a Rule 12(b)(5) motion, "plaintiffs bear the burden of demonstrating that they complied with all statutory and due process requirements." *Id.* "'The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt.'" *Id.* (citation omitted).

FED. R. CIV. P. 4(h) governs service on a domestic or foreign corporation or partnership. Rule 4(h)(1)(A) permits service "in the manner prescribed by Rule 4(e)(1) for serving an individual," and Rule 4(h)(1)(B) allows for service "by delivering a copy of the

2

summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Service on a corporation may be satisfied by complying with either subsection.

Pursuant to Rule 4(h)(1)(A), Rule 4(e) allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Here, service could have been performed pursuant to Oklahoma or Alabama law. Service was completed by Federal Express ("FedEx"). Defendant contends this constitutes insufficient service under both Oklahoma and Alabama law because it was not delivered by certified mail. Mot. to Dismiss [Doc. No. 12] at 10. In response, Plaintiff asserts that Federal Express has been deemed sufficient in this Circuit. Pl.'s Resp. Br. [Doc. No. 15] at 5–6. The case cited by Plaintiff, however, is from the District of Colorado addressing service under Colorado law. *See Kulikowski v. Payscale*, No. 18-cv-00702-MSK-MEH, 2018 WL 3209109, at *4 (D. Colo. June 29, 2018).

In any event, Plaintiff has satisfied Rule 4(h)(1)(B). Plaintiff contends that it served Defendant's registered agent, thereby satisfying this subsection. Defendant acknowledges this in its Motion. *See* Mot. to Dismiss [Doc. No. 12] at 10 ("On August 20, 2020, Wiregrass's registered agent, John L. Harper, received an attempted service by CMI via Federal Express ("FedEx")."). Further, Defendant's registered agent, John L. Harper, concedes in his affidavit that "[o]n or about August 20, 2020, I received, as Registered Agent and President of Wiregrass, a copy of the Complaint . . . via Federal Express." *See* [Doc. No. 12], Ex. 1., ¶ 11. Subsection (B) allows for service on a corporation's registered

3

agent, and it makes no distinction for certified mail. As such, the Court finds that the service on John Harper by FedEx satisfies the requirement under Rule 4(h)(1)(B), and service was sufficient.

## II.     Personal Jurisdiction

When considering a motion to dismiss for lack of personal jurisdiction, a district court has discretion to determine the procedure to employ to rule on the issue. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008); *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). Where the parties submit sufficient evidence to allow the Court to make this determination, a hearing is not required. *Dudnikov*, 514 F.3d at 1069.

Having reviewed the parties' briefs and the evidentiary materials in this case, the Court concludes that an evidentiary hearing is not required because the record contains sufficient evidence on which to base a ruling on the question of personal jurisdiction. Accordingly, the Court will decide the issue without conducting an evidentiary hearing.

It is well established that, to be subject to the personal jurisdiction of the court, a nonresident defendant must have sufficient contacts with the forum state to satisfy the requirements of due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). The Court's analysis of personal jurisdiction in diversity cases generally involves a two-step inquiry: courts must determine whether the exercise of jurisdiction is consistent with (1) the long-arm statute of the forum state, and (2) the due process clause of the fourteenth amendment. *Rambo v. Am. S. Ins. Co.*, 839 F. 2d 1415, 1416 (10th Cir. 1988).

In Oklahoma, that test becomes a single inquiry because Oklahoma's long-arm statute reaches to the full extent of due process. *Id.*

To establish the requisite minimum contacts, a plaintiff must show that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state"; for this purpose, a defendant need not be physically present or have physical contacts with the forum, so long as its efforts are purposefully directed there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The minimum contacts standard may be satisfied in two ways. First, contacts may be satisfied by a showing that the defendant has purposefully directed its activities at residents of the forum state, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Id.* at 472. If this showing is made, the court has "specific" personal jurisdiction over the defendant. *Id.* Where a plaintiff's cause of action does not arise from the defendant's activities within the forum state, however, minimum contacts may be established by showing that the defendant had "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (internal quotations and citation omitted). If so, the court has "general" personal jurisdiction over the defendant.

Here, Plaintiff concedes that the Court does not have general jurisdiction over Defendant. *See* Pl.'s Resp. Br. [Doc. No. 15] at 7–8 ("Accordingly, CMI does not contend this Court may exercise general jurisdiction over Wiregrass."). Thus, the inquiry is focused on specific jurisdiction. The Tenth Circuit has explained the analysis to determine whether specific personal jurisdiction exists:

5

> [A]n analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause is a two-step inquiry. *See Benton v. Cameco Corp.,* 375 F.3d 1070, 1075 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005). First, we consider whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. Second, "if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998) (quotations omitted).

*Pro Axess, Inc. v. Orlux Distrib, Inc.*, 428 F.3d 1270, 1276–77 (10th Cir. 2005).

### a. Sufficient Minimum Contacts

"In determining whether a defendant has established sufficient minimum contacts with the forum state, we examine whether the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *Pro Axess*, 428 F.3d at 1277 (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A defendant's contacts are sufficient if "the defendant purposefully directed its activities at residents of the forum . . . and . . . the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.*" OMI Holdings,* 149 F.3d at 1091 (quotations, citations, and emphasis omitted). A defendant's contacts with the forum state "must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov,* 514 F.3d at 1070. To establish minimum contacts based on purposeful availment, the contacts must "result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Rambo*, 839 F.2d at 1419 (quoting *Burger*

6

*King,* 471 U.S. at 474-75) (emphasis in original). Purposeful availment generally requires "affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Rambo*, 839 F.2d at 1420; *see also Dudnikov*, 514 F.3d at 1071.

Defendant contends it does not have sufficient minimum contacts to establish personal jurisdiction. Defendant asserts that the only connection to Oklahoma is "CMI's corporate residency." Mot. to Dismiss [Doc. No. 12] at 17. Defendant maintains that it did not conduct any activities in Oklahoma. *Id.* As to the first contract, the equipment was manufactured in Iowa and shipped to Alabama for use. *Id.* The second contract related to the relocation of a plant in Alabama. *Id.* In response, Plaintiff contends that Defendant solicited bids by telephone and email from Plaintiff, which is based in Oklahoma City. Pl.'s Resp. Br. [Doc. No. 15] at 9. Plaintiff also asserts that Defendant had long-term business dealings with CMI, and Defendant is not a passive purchaser under Oklahoma law.

Contracts may confer sufficient ties to establish personal jurisdiction, but an "out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020). Factors to consider are, among other things, (1) prior negotiations, (2) future consequences, (3) contract terms, and (4) the actual course of dealing. *See Love's Travel Stops & Country Stores, Inc. v. Oakview Const., Inc.*, No.

7

CIV-10-235-D, 2010 WL 4811450, at *3 (W.D. Okla. Nov. 19, 2010) (quoting *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008).

Here, neither of the two contracts were executed or negotiated in person. Both contracts involved discrete, unrelated transactions; the first contract related to a single sale of equipment, and the second contract related to the relocation of a plant in Alabama. Pursuant to the first contract, the equipment was manufactured in Iowa for use in Alabama. The parties present no evidence that the equipment ever entered Oklahoma. Neither contract involved long-term or continuing obligations. Though there is evidence that Plaintiff traveled from Oklahoma to Alabama, the parties present no evidence that Defendant ever traveled to Oklahoma. All communications were conducted by phone, mail, or email. *See Rambo*, 839 F.2d at 1418–19 ("[O]rdinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity . . . .'") (quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)).[1]

Plaintiff maintains that the Court has personal jurisdiction in light of the parties' long-standing business relationship, which dates back to 1985. Pl.'s Resp. Br. [Doc. No. 15], at 1–2, ¶ 1. In support of this assertion, Plaintiff attaches an affidavit from Tim J. Owens, a CMI manager, and a copy of a sales agreement from 2003. *See* Pl.'s Resp. Br. [Doc. No. 15-1], at 2, ¶ 14; [Doc. No. 15-1], at 65. Aside from general conclusory

---

[1] CMI also contends that personal jurisdiction is proper because Wiregrass solicited bids from CMI for both contracts. Pl.'s Resp. Br. [Doc. No. 15] at 9. All communications appear to have been by phone, email, or mail. As such, this is not sufficient to establish purposeful activity for the minimum contacts test.

allegations, Plaintiff provides no factual support for the assertion that the relationship dates back to 1985.[2] The sales agreement from 2003 is for a single sale of equipment, much like the first contract in the present suit. The agreement also states that Plaintiff would send a representative to Alabama. The parties provide no facts to support that Defendant ever traveled to Oklahoma pursuant to this contract. As such, the Court does not find Plaintiff's argument persuasive regarding personal jurisdiction over Defendant. The transactions between the parties are too attenuated to demonstrate that Defendant established minimum contacts with Oklahoma.[3]

### III.  Improper Venue

Where subject matter jurisdiction is based on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(b), which provides:

> A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;* or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

---

[2] *See* Pl.'s Resp. Br. [Doc. No. 15] at 11 ("Wiregrass and its predecessor companies have a long history of buying equipment and services from CMI and its predecessors in Oklahoma City, and a long understanding of the terms under which CMI sells equipment and services."); ("Wiregrass has long-term business dealings with CMI in Oklahoma and significant activities took place in Oklahoma regarding the contracts at issue."). *See also* Pl.'s Resp. Br. [Doc. No. 15] at 12 ("None of this is a surprise to Wiregrass based on its long-term course of dealings with CMI over the last thirty-five (35) years.").

[3] As such, the Court does not address whether the exercise of personal jurisdiction offends notions of fair play and substantial justice.

(emphasis added).

The Court focuses on the second prong to determine whether this District is the proper venue.[4] Here, Plaintiff seeks to hold Defendant liable for breach of contract and unjust enrichment because of the two contracts discussed herein. Defendant states that a substantial part of the events under the contracts did not occur in Oklahoma. Mot. to Dismiss [Doc. No. 12] at 22. Defendant asserts that performance under the contracts took place in Alabama, and the equipment and plant are located in Alabama. Plaintiff, in its response, does not address Defendant's assertions related to improper venue. Rather, Plaintiff asserts the case should not be transferred because "the Agreement and the Relocation Contract have a significant connection to Oklahoma." Pl.'s Resp. Br. [Doc. No. 15] at 18. Plaintiff contends that "[a] transfer to Alabama would do nothing to enhance the overall convenience of witnesses to this breach of contract lawsuit, nor has Wiregrass established how the transfer would advance the interests of justice." *Id.*

The Court does not find Plaintiff's assertions persuasive. A substantial part of the events giving rise to the breach of contract and unjust enrichment claims occurred in Alabama. The equipment and plant at issue are located in Alabama. As such, the Court finds that the action may not properly proceed in this Court.

Where venue is improper, the Court must apply 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to

---

[4] As to the first prong, Defendant is an Alabama corporation. As to the third prong, the Court established herein that it does not have personal jurisdiction over Defendant.

any district or division in which it could have been brought." A court may cure "jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006).[5] Section 1406(a) confers upon this Court the discretion to determine whether the action should be dismissed or transferred in the interests of justice. *Johnson v. Christopher*, 233 F. App'x 852, 854 (10th Cir. 2007) (unpublished opinion) (citing *Doering ex rel. Barrett v. Copper Mtn., Inc.*, 259 F.3d 1202, 1209 n.3 (10th Cir. 2001)). "[F]actors warranting transfer rather than dismissal . . . include finding that the new action would be time barred; that the claims are likely to have merit; and that the original action was filed in good faith rather than filed after 'plaintiff either realized or should have realized that the forum in which he or she filed was improper.'" *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 106–07 (10th Cir. 2012) (quoting *Trujillo*, 465 F.3d at 1223 n.16).

Defendant contends the appropriate forum is the Middle District of Alabama. Defendant asserts that Plaintiff chose to file suit in this forum, despite "failing to show significant connections between it and CMI's underlying claims." Mot. to Dismiss [Doc. No. 12] at 26. Defendant states that "the bulk of the evidence and witnesses involved in this case are located in Alabama" and "a transfer of venue is warranted in the interest of

---

[5] Section 1631 "was 'specifically designed for cases transferred from one federal court to another for lack of jurisdiction,' and that it, 'served to simplify the process and streamline its application.'" *State ex rel. Balderas v. Real Estate Law Center P.C.*, 430 F. Supp. 3d 900, 917 (D.N.M. 2019) (quoting *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987)).

justice and judicial fairness." *Id.* Defendant also asserts that the timing of this suit is suspect because Defendant made a settlement demand before Plaintiff filed. *Id.* Plaintiff does not address these allegations directly, but instead, asserts that a transfer is improper. In exercising its discretion, the Court finds that a transfer is proper.

## CONCLUSION

Accordingly, Defendant's motion to dismiss [Doc. No. 12] is **DENIED**, but its alternative request to transfer this case is **GRANTED.** The Court Clerk shall take the action necessary to effectuate the transfer of this case to the Middle District of Alabama.

**IT IS SO ORDERED** this 28th day of May, 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge